# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                 Bankr. No. 19-40377

      Lakota, Inc.,                                     Chapter 11

                         Debtor.

---

## DEBTOR'S MOTION FOR EXPEDITED RELIEF AND
## ORDER AUTHORIZING USE OF CASH COLLATERAL

---

Lakota, Inc. ("Debtor") moves the court for the relief requested below and gives notice of hearing.

1.      The Court will hold a hearing on the Debtor's request for interim relief at 3:00 p.m. on February 19, 2019 and will hold a final hearing at 3:00 p.m. on March 19, 2019 in Courtroom 2C of the United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.

2.      The Debtor hereby gives notice that it will not object to the timeliness of any response to the request for expedited relief that is filed and delivered prior to the interim hearing. Any response to the request for a final order authorizing the use of cash collateral must be delivered or mailed not later than March 14, 2019, which is five days before the time set for hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

3.      This court has jurisdiction over this motion pursuant to 28 USC §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this chapter 11 case was filed on February 12, 2019 (the "Petition Date"). The case is now pending in this court.

1

4.      This motion arises under 11 USC § 363, 1107, and 1108 and Fed. R. Bankr. P. 4001. This motion is filed under Fed. R. Bankr. P. 9006 and 9014 and Local Rules 9006-1 and 9013-1 through 9013-3. Movant seeks authority, on an interim and final basis, for the use of cash collateral.

5.      The Debtor remains a debtor in possession under sections 1106 and 1107 of the Bankruptcy Code.

6.      No committee of unsecured creditors has been appointed, and no motion for appointment of a trustee or examiner has been filed in this bankruptcy case.

7.      Pursuant to section 363 of the Bankruptcy Code, the Debtor seeks authority to use cash collateral.

8.      The Debtor is a Minnesota corporation that manufactures custom motorcycles and modifies motorcycles.

## SECURED DEBT

### A.      Kensington Bank

9.      As of the Petition Date, the Debtor was indebted to Kensington Bank pursuant to the following:

a)      Promissory Note dated April 17, 2014 in the original principal amount of $210,000.00;

b)       Promissory Note dated October 5, 2018 in the original principal amount of $85,180.00; and

c)      Promissory Note dated February 1, 2019 in the original principal amount of $200,000.00.

(collectively, the "Kensington Notes").

10.     The Debtor's performance according to the terms of the Kensington Notes is secured pursuant to the terms of Commercial Security Agreements dated April 17, 2014 and October 5, 2018 (referred to, collectively, as the "Kensington Security Agreement"), pursuant to which the Debtor granted Kensington a security interest in substantially all of the Debtor's personal property, including, but not limited to, inventory, equipment, accounts, chattel paper, instruments, letter of credit rights, deposit accounts, investment property, money, and all other rights to payment.

11.     Kensington perfected its interest under the Kensington Security Agreement by filing a UCC-1 financing statement with the office of the Minnesota Secretary of State on April 18, 2014 (Doc. No. 201436285183).

12.     The aggregate outstanding balance owing under the Kensington Notes as of the Petition Date was approximately $389,683.00.

## A.     First Community Bank

13.     As of the Petition Date, the Debtor was indebted to First Community Bank pursuant to the terms of loan agreement dated on or about February 18, 2016 under which the Debtor borrowed the sum of $300,000.00.

14.     The Debtor's payment of all amounts owing to First Community Bank is secured pursuant to the terms of Commercial Security Agreements dated on or about February 19, 2016, (the "First Community Security Agreement"), pursuant to which the Debtor granted First Community Bank a security interest in s all of the Debtor's inventory, equipment, and accounts.

15.     First Community Bank perfected its interest under the First Community Security Agreement by filing a UCC-1 financing statement with the office of the Minnesota Secretary of State on February 23, 2016 (Doc. No. 874461200029).

3

16.     The aggregate outstanding balance owing under the First Community Note as of the Petition Date was approximately $9,758.00.

### Facts regarding Collateral Values and Cash Needs

17.     The Debtor values its assets as of (a) the Petition Date; (b) the date that is 21 days after the Petition Date; and (c) the date of the proposed ending use of cash collateral, all as set forth in the Exhibit A attached to the Declaration of Natalya Kelly (the "Declaration"). For purposes of Exhibit A, inventory and equipment were valued at their estimated value in an orderly liquidation.

18.     The Debtor's cash needs for the period from February 13, 2019 through March 6, 2019 are as set forth on Exhibit B attached to the Declaration. The expenses set forth in Exhibit B are limited to those that are required to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion.

19.     The Debtor's cash needs for the period from March 2019 through August 2019 are as set forth on Exhibit C attached to the Declaration.

20.     The Debtor needs to use cash collateral to meet its operating expenses.

### Offer of Adequate Protection

21.     As and for adequate protection of Kensington and First Community Bank's interest in the Collateral:

   a.     The Debtor will use cash to pay ordinary and necessary business expenses and administrative expenses for the items and in such use will not vary materially from that provided for in Exhibits B and C attached to Debtor's Declaration, except for variations attributable to expenditures specifically authorized by Court order.

   b.     The Debtor will grant Kensington and First Community Bank replacement liens, to the extent of the Debtor's use of cash collateral, in post-petition inventory, accounts, equipment, and general intangibles, with such liens being of the same priority, dignity, and effect as their respective pre-petition liens.

4

c.    The Debtor will carry insurance on its assets.

d.    The Debtor will provide to Kensington and First Community Bank such reports and documents as they may reasonably request.

e.    The Debtor will afford Kensington and First Community Bank the right to inspect Debtor's books and records and the right to inspect and appraise the Collateral at any time during normal operating hours and upon reasonable notice to the Debtor and its attorneys.

f.    The Debtor's permitted use of cash collateral: (i) the Debtor defaults in performance of any obligation hereunder; (ii) Kensington or First Community Bank gives notice of the default to Debtor and its counsel; and (iii) such default is not cured within seven business days from the date of receipt of the notice.

## NEED FOR EXPEDITED RELIEF

22.    Even a relatively short delay in payment of critical expenses may very well result in impairment of employee and vendor relations, and the Debtor therefore submits that expedited relief pursuant to Fed. R. Bankr. P. 4001 and 9006 is warranted.

23.    Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call Natalya Kelly, the Debtor's President and Chief Executive Officer, to testify regarding facts relevant to this Motion. Ms. Kelly's business address is 3033 Campus Drive, Suite W110, Plymouth, MN 55441.

WHEREFORE, the Debtor moves the Court for an order (a) authorizing use of cash collateral and approving the Debtor's offer of adequate protection on an interim basis; (b) authorizing use of cash collateral and approving the Debtor's offer of adequate protection on a final basis; and (c) granting such other relief as may be just and equitable.

Date: February 13, 2019                    COZEN O' CONNOR

                                            By:  /e/ Joel D. Nesset
                                            Joel D. Nesset (#030475X)
                                            33 South Sixth Street, Suite 3800
                                            Minneapolis, MN 55402
                                            Telephone:  612-260-9000
                                            Fax:  612-260-9080

                                            *Attorneys for Debtor Lakota, Inc.*

## Verification

I, Natalya Kelly, the President of Lakota, Inc., declare under penalty of perjury that facts stated in the foregoing motion are true and correct according to the best of my knowledge, information, and belief.

Executed on: February 13, 2019       Signed: _____

                                            Natalya Kelly

1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                          Bankr. No. 19-40377

    Lakota, Inc.,                                            Chapter 11

Debtor.

---

### DECLARATION OF NATALYA KELLY IN SUPPORT OF DEBTOR'S MOTION FOR EXPEDITED RELIEF AND ORDER AUTHORIZING USE OF CASH COLLATERAL

---

1.     I am the president of the Debtor in the above-referenced bankruptcy case. I make this Unsworn Declaration in Support of the Debtor's Motion for Expedited Relief and Order Authorizing Use of Cash Collateral ("Motion").

2.     I am familiar with the Debtor's assets, debts, and operations.

3.     As of February 12, 2019 ("Filing Date") the Debtor was indebted to Kensington Bank in the approximate amount of $389,683.00 in debt secured by, among other things, an interest in cash collateral, and was indebted to First Community Bank in the approximate amount of $9,758.00.

4.     The Debtor values its assets as of: (a) the Filing Date; (b) the date of the beginning of the period of time for which Debtor seeks authorization to use cash collateral for use of cash collateral; and (c) the date of the end of the period of time for which the Debtor currently seeks authorization to use cash collateral, all as set forth in Exhibit A attached hereto.

5.     The Debtor needs the use of cash collateral to pay operating expenses.

6.     For the period from February 13, 2019 through March 6, 2019, the Debtor requires cash for the items and in the amounts specified on the attached Exhibit B.  The expenditures provided for in Exhibit B are limited to those that are necessary to avoid immediate and irreparable harm to the bankruptcy estate.

1

7.      For the period from March 6, 2019 through August 31, 2019, the Debtor requires cash for the items and in the amounts specified on the attached Exhibit C.

8.      The Debtor proposes to adequately protect Kensington Bank and First Community Bank in the manner and on the terms described in the Motion.

9.      I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:  February 13, 2019

Natalya Kelly

2

**Case No. 19-40377**

**Exhibit A - Current and Projected Asset Values**

|  | 2/12/2019 | 3/6/2019 | 8/31/2019 |
|---|---|---|---|
| Cash | $ 6,144.00 | $ 6,050.00 | $ 14,511.00 |
| Accounts Receivable | $ 11,350.00 | $ 11,350.00 | $ 11,350.00 |
| Inventory | $ 335,000 | $ 335,000 | $ 335,000.00 |
| Equipment ** | $ 78,000 | $ 78,000.00 | $ 78,000.00 |
| Office Equipment | $ 5,800 | $ 5,800.00 | $ 5,800.00 |
| **Total** | **$ 436,294.00** | **$ 436,200.00** | **$ 444,661.00** |

**Case No. 19-40377**
**Exhibit B - 21 Day Budget**

| Revenue (Sales) | | | |
|---|---|---|---|
| Sales | | $ | 8,250 |
| Storage/Rental | | $ | 3,450 |
| **Total Revenue (Sales)** | | **$** | **11,700** |
| | | | |
| **Cost of Sales** | | | |
| Parts/cycles | | $ | 5,775 |
| Other costs | | $ | 1,170 |
| **Total Cost of Sales** | | **$** | **6,945** |
| **Gross Profit** | | **$** | **4,755** |
| | | | |
| **Expenses** | | | |
| Advertising | | $ | 1,200 |
| Auto Expense | | $ | 638 |
| Bank charges | | $ | 60 |
| Dues Subscription | | $ | 184 |
| Health Insurance | | $ | 225 |
| Busines Insurance | | $ | 1,425 |
| Office Expense | | $ | 206 |
| Payroll Expense | | $ | 6,375 |
| Repair & Maintenance | | $ | 1,350 |
| Shop supplies | | $ | 319 |
| Telephone Expense | | $ | 244 |
| Utilities | | $ | 1,575 |
| **Total Expenses** | | **$** | **13,800** |
| Shareholder Loan/Contribution | | **$** | **10,000** |
| **Net** | | **$** | **955** |

**Exhibit C - Six Month Projections**

| | | March | April | May | June | July | August |
|---|---|---|---|---|---|---|---|
| **Revenue (Sales)** | | | | | | | |
| Sales | | $ 50,000 | $ 35,000 | $ 85,000 | $ 25,000 | $ 80,000 | $ 40,000 |
| Storage/Rental | | $ 2,500 | $ 4,000 | $ 9,000 | $ 9,000 | $ 9,000 | $ 9,000 |
| **Revenue (Other)** | | | | | | | |
| Shareholder Loan/Contribution | | $ 10,000 | | | | | |
| **Total Revenue** | | $ 62,500 | $ 39,000 | $ 94,000 | $ 34,000 | $ 89,000 | $ 49,000 |
| | | | | | | | |
| **Cost of Sales** | | | | | | | |
| Parts/cycles | | $ 35,000 | $ 24,500 | $ 59,500 | $ 17,500 | $ 56,000 | $ 28,000 |
| Other costs | | $ 5,000 | $ 3,120 | $ 7,520 | $ 2,720 | $ 7,120 | $ 3,920 |
| **Total Cost of Sales** | | $ 40,000 | $ 27,620 | $ 67,020 | $ 20,220 | $ 63,120 | $ 31,920 |
| | | | | | | | |
| **Gross Profit** | | $ 22,500 | $ 11,380 | $ 26,980 | $ 13,780 | $ 25,880 | $ 17,080 |
| | | | | | | | |
| **Expenses** | | | | | | | |
| Advertising | | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 |
| Auto Expense | | $ 925 | $ 725 | $ 700 | $ 1,800 | $ 850 | $ 675 |
| Bank charges | | $ 70 | $ 225 | $ 150 | $ 300 | $ 350 | $ 600 |
| Dues Subscription | | $ 245 | $ 81 | $ 225 | $ 225 | $ 550 | $ 625 |
| Health Insurance | | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 |
| Busines Insurance | | $ 2,250 | $ 2,000 | $ 1,800 | $ 1,850 | $ 178 | $ 1,850 |
| Office Expense | | $ 775 | $ 850 | $ 160 | $ 1,000 | $ 1,000 | $ 70 |
| Payroll Expense | | $ 8,000 | $ 8,000 | $ 8,000 | $ 8,000 | $ 8,000 | $ 8,000 |
| Repair & Maintenance | | $ 725 | $ 700 | $ 950 | $ 1,000 | $ 250 | $ 450 |
| Shop supplies | | $ 90 | $ 400 | $ 425 | $ 500 | $ 1,000 | $ 500 |
| Telephone Expense | | $ 325 | $ 325 | $ 325 | $ 325 | $ 325 | $ 325 |
| Utilities | | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 |
| **Total Expenses** | | $ 17,405 | $ 17,306 | $ 16,735 | $ 19,000 | $ 16,503 | $ 17,095 |
| **Net Profit** | | $ 5,095 | $ (5,926) | $ 10,245 | $ (5,220) | $ 9,377 | $ (15) |
| **Beginning Cash** | | $ 955 | $ 6,050 | $ 124 | $ 10,369 | $ 5,149 | $ 14,526 |
| **Ending Cash** | | $ 6,050 | $ 124 | $ 10,369 | $ 5,149 | $ 14,526 | $ 14,511 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                     Bankr. No. 19-40377

     Lakota, Inc.,                                        Chapter 11

                      Debtor.

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED RELIEF AND ORDER AUTHORIZING USE OF CASH COLLATERAL

---

Lakota, Inc. ("Debtor") submits this Memorandum of Law in support of its Motion for Expedited Relief and Order Authorizing Use of Cash Collateral ("Motion")

## I.  STATEMENT OF FACTS

Debtor relies on the facts set forth in the Motion and incorporates the same herein by this reference.

## II.  STATEMENT OF LAW AND DISCUSSION

### A.  Expedited Relief

Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides as follows:

The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

RULE 4001-2(b) of the Local Rules of Bankruptcy Procedure provides:

(b) PRELIMINARY HEARING. If the hearing on a motion for use of cash collateral is a preliminary hearing pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2), the debtor's separate verified statement shall contain an itemization of the proposed uses of cash collateral that are required to avoid immediate and irreparable harm to the estate pending a final hearing on the motion.

1

The Debtor has made all of the showings necessary to support its request for expedited relief.  The proposed interim budget provides only for the payment of those expenses as are necessary to avoid immediate and irreparable harm.

## B.  Cash Collateral

Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may use cash collateral only with the secured creditor's consent or if the court, after notice and a hearing, so orders.  Section 363(e) of the Bankruptcy Code provides that the court must provide the secured creditor with adequate protection of its interest upon request of the creditor.  With respect to adequate protection:

In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.  *In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).

Based on the facts alleged in the Motion and Debtor's Declaration, the secured creditors' interest in the Collateral is adequately protected under Debtor's offer.  The risk to the secured creditors' interest in the cash collateral is that Debtor will use all of the collateral and not generate sufficient post-petition collateral to replace the used collateral.  Debtor has set forth how the value of the assets will change, between the Filing Date and the dates through which the Debtor seeks use of cash collateral.  Debtor has further set forth in Debtor's Declaration, Debtor's cash flow projections detailing Debtor's projections of its operations on an actual cash basis.  Pursuant to Debtor's projections, the secured creditors' collateral position does not adversely change during the period of the proposed use of cash collateral, and, in fact, improves.

2

Based on the facts and circumstances of this case, under the offer set forth in the Motion, the secured creditors are adequately protected against any risk that the value of the Collateral will erode during the pendency of this case.

### III.  CONCLUSION

For the foregoing reasons, the Debtor requests that the Court authorize the use of cash collateral as provided in the Motion.


Date: February 13, 2019                    COZEN O' CONNOR

                                           By:  /e/ Joel D. Nesset
                                           Joel D. Nesset (#30475X)
                                           33 South Sixth Street, Suite 3800
                                           Minneapolis, MN 55402
                                           Telephone:  612-260-9000
                                           Fax:  612-260-9080

                                           *Attorneys for Debtor Lakota, Inc.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:                                                          Case No.: 19-40377

Lakota, Inc.,                                                            Chapter 11

                          Debtor.

---

**PROOF OF SERVICE**

---

Amy E. Kulbeik, an employee of Cozen O'Connor, and in the course of said employment on February 13, 2019, caused the following documents:

1.      Debtor's Motion for Expedited Relief and Order Authorizing Use of Cash
        Collateral; and

2.      Debtor's Motion for Expedited Relief and for Order Authorizing Payment of Pre-
        Petition Wages and Other Employment related Obligations.

to be served on the parties on the attached list by enclosing true and correct copies of same in an envelope, properly addressed and postage prepaid, and depositing same in the United States mail.

Dated:  February 13, 2019                          /s/ Amy E. Kulbeik

# SERVICE LIST

| | | |
|---|---|---|
| Connie Huggett<br>11565 88th Avenue N.<br>Maple Grove MN 55369 | Daniel Gray Leland<br>222 S. Ninth Street<br>#2955<br>Minneapolis MN 55402 | First Community Bank<br>P.O. Box 128<br>500 Central Avenue<br>Lester Prairie MN 55354 |
| Kensington Bank<br>101 E. 3rd Street<br>P.O. Box 220<br>Cokato MN 55321 | Paper Chase Accounting Inc.<br>3033 Campus Drive<br>Suite W110-A<br>Plymouth MN 55441 | Timothy Wodarck<br>3126 West Edge Blvd.<br>Mound MN 55364 |
| US Bank<br>P.O. Box 790408<br>Saint Louis MO 63179-0408 | Willenbring, Dahl, Wocken<br>& Zimm<br>318 Main Street<br>P.O. Box 417<br>Cold Spring MN 56320 | Lakota, Inc.<br>3033 Campus Drive<br>Suite W110<br>Minneapolis, MN 55441 |
| Internal Revenue Service<br>Centralized Insolvency<br>Operations<br>PO box 7346<br>Philadelphia PA 19101-7346 | MN Dept. of Revenue<br>Attn: Collection Division<br>Bankruptcy Section<br>P.O. Box 64447<br>St. Paul, MN 55164-0447 | US Attorney<br>300 South Fourth Street<br>#600<br>Minneapolis, MN 55415 |

LEGAL\39982762\1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                                    Bankr. No. 19-40377

    Lakota, Inc.,                                                      Chapter 11

                        Debtor.

## ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

This case came before the court on the debtor's motion for an order authorizing use of cash collateral. Based on the arguments of counsel and all the files, records, and proceedings,

IT IS ORDERED:

1.      The debtor's request for expedited relief is granted.

2.      The debtor is authorized, subject to the terms herein, to use cash collateral in which Kensington Bank and First Community Bank have an interest through March 6, 2019.

3.      The debtor's use of cash collateral is subject to the following terms:

(a)      The debtor will use cash to pay ordinary and necessary business expenses and administrative expenses for the items and such use will not vary materially from that provided for in Exhibit B attached to the debtor's president's declaration, except for variations attributable to expenditures specifically authorized by Court order.

(b)      The debtor will grant Kensington Bank and First Community Bank replacement liens, to the extent of the debtor's use of cash collateral, in post-petition inventory, accounts, equipment, and general intangibles, with such lien being of the same priority, dignity, and effect as their respective pre-petition liens.

(c)      The debtor will carry insurance on its assets.

(d)      The debtor will provide Kensington Bank and First Community Bank with such reports and documents as they may reasonably request.

(e)      The debtor will afford Kensington Bank and First Community Bank the right to inspect the debtor's books and records and the right to inspect and appraise any part of their collateral at any time during normal operating hours and upon reasonable notice to the debtor and its attorneys.

(f)      The debtor's permitted use of cash collateral will cease if:

1

(i)       The debtor defaults in performance of any obligation hereunder;

(ii)      Kensington Bank or First Community Bank gives notice of such default to the debtor and its counsel; and

(iii)     Such default is not cured within seven business days from the date of receipt of the notice.


Dated:

_____
Katherine A. Constantine
U. S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Bankr. No. 19-40377

    Lakota, Inc.,                                            Chapter 11

                   Debtor.

---

## ORDER AUTHORIZING USE OF CASH COLLATERAL

---

This case came before the court on the debtor's motion for an order authorizing use of cash collateral.  Based on the arguments of counsel and all the files, records, and proceedings,

IT IS ORDERED:

1.      The debtor is authorized, subject to the terms herein, to use cash collateral in which Kensington Bank and First Community Bank have an interest through August 31, 2019.

2.      The debtor's use of cash collateral is subject to the following terms:

(a)      The debtor will use cash to pay ordinary and necessary business expenses and administrative expenses for the items and such use will not vary materially from that provided for in Exhibit C attached to the debtor's president's declaration, except for variations attributable to expenditures specifically authorized by Court order.

(b)      The debtor will grant Kensington Bank and First Community Bank replacement liens, to the extent of the debtor's use of cash collateral, in post-petition inventory, accounts, equipment, and general intangibles, with such lien being of the same priority, dignity, and effect as their respective pre-petition liens.

(c)      The debtor will carry insurance on its assets.

(d)      The debtor will provide Kensington Bank and First Community Bank with such reports and documents as they may reasonably request.

(e)      The debtor will afford Kensington Bank and First Community Bank the right to inspect the debtor's books and records and the right to inspect and appraise any part of their collateral at any time during normal operating hours and upon reasonable notice to the debtor and its attorneys.

(f)      The debtor's permitted use of cash collateral will cease if:

      (i)      The debtor defaults in performance of any obligation hereunder;

(ii)      Kensington Bank or First Community Bank gives notice of such default to the debtor and its counsel; and

(iii)     Such default is not cured within seven business days from the date of receipt of the notice.


Dated:

_____
Katherine A. Constantine
U. S. Bankruptcy Judge

2